<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **CURTIS FELDER,**  Petitioner,  v.  **UNITED STATES OF AMERICA,**  Respondent. | Civil Action No. 22-4569 (KSH)  **OPINION** |

**Katharine S. Hayden, U.S.D.J.**

Curtis Felder filed an amended motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, arguing that he was improperly sentenced as a career offender and that his attorney provided ineffective assistance in failing to challenge his career offender designation. Felder also seeks reconsideration of the Court's prior order denying his requests for counsel and to submit a second amended § 2255 motion. The Court denies Felder's request for reconsideration. The Court also denies his amended § 2255 motion and denies a certificate of appealability.

**I.    FACTUAL BACKGROUND & PROCEDURAL HISTORY**

On July 17, 2019, Felder pleaded guilty to Counts One and Two of a three count Indictment, charging him with possessing a loaded firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1) and possessing with intent to distribute cocaine in violation of 18 U.S.C. 841(a)(1) and (b)(1)(C). (*See* Crim. No. 18-705, ECF Nos. 22, 24.) Pursuant to Schedule A of the Plea Agreement, the parties stipulated that that Felder was a career offender under U.S.S.G. § 4B1.1 with a total offense level of 32 and a criminal history category of VI. (*See* ECF No. 24 at 9; *see also* PSR ¶ 9.) The parties further agreed that Felder was entitled to a deduction for acceptance of

responsibility, which reduced his total offense level to 29, and that neither party would argue for a sentence outside the stipulated range of 151 to 188 months. (Crim. No. 18-705, ECF No. 24 at 10.)

On October 15, 2020, the Court sentenced Felder to 151 months' imprisonment and ordered that his federal sentence run concurrent to the New York state sentence he was already serving. (*Id.* at ECF No. 43.) The judgment of conviction was entered on October 26, 2020. (*Id.* at ECF No. 46.)

On March 30, 2022, Felder submitted a letter to the Court asking for an extension of time to file his § 2255 motion due to "the extremely terrible COVID-19 outbreak." (*Id.* at ECF No. 48.) In that letter, Felder stated that that he was incarcerated at Hudson County Jail from October 15, 2020 through March 13, 2021, and was incarcerated at FCI Lewisburg from March 13, 2021 through April 6, 2021. (*Id.*) Felder further stated that he was incarcerated at MDC Brooklyn from April 7, 2021 through June 8, 2021, and was incarcerated at FCI Berlin from June 9, 2021 through March 30, 2022. (*Id.*) In addition, Felder stated that these facilities were on "complete lockdown" until March 21, 2022. (*Id.*) In the letter, Felder also cited to *United States v. Nasir*, 17 F.4th 459 (3d Cir. 2021) and argued that he was improperly sentenced as a career offender. (*Id.*)

The Court notified Felder that it intended to construe his letter as a § 2255 motion and deferred deciding whether he was entitled to equitable tolling. (*Id.* at ECF No. 49.) The Court provided Felder with 30 days to file an amended § 2255 motion that included all his claims and arguments in support of equitable tolling. (*Id.*)

Felder submitted his amended § 2255 motion to prison officials on June 23, 2022. (Civ. No. 22-4569, ECF No. 1 at 14.)[1] In his amended § 2255 motion, Felder contends that his counsel

---

[1] The docket entries cited in the remainder of this opinion refer to entries on the civil docket, No. 22-4569.

2

was ineffective for failing to argue that his cocaine-related state offenses were not valid predicates for the career offender enhancement and further claims pursuant to *Nasir* that his offenses are inchoate crimes that do not qualify as career offender predicates. (ECF No. 1 at 5-8.) The amended § 2255 motion does not include any facts in support of equitable tolling, as the Court instructed, and asserts that the motion is timely. (*Id.* at 13.)

The government filed its answer on April 25, 2023, arguing that Felder's amended § 2255 motion is untimely and meritless. (ECF No. 5.) Felder did not file a reply brief; instead, on May 8, 2023, he submitted a letter request for appointment of counsel. (ECF No. 6.) Felder also sought leave to file a second amended § 2255 motion, and submitted a supporting declaration. (ECF Nos. 7, 7-1.)

In that declaration, Felder avers that he was not able to conduct any legal research while housed at Hudson County Jail, FCI Lewisburg, and FCI Brooklyn due to the COVID-19 lockdowns. (ECF No. 7-1, Felder Decl. ¶¶ 2-4.) On June 9, 2021, Felder was transferred to FCI Berlin, where he is currently incarcerated. (*Id.* at ¶ 5.) According to Felder, FCI Berlin was also on COVID-19 lockdown and permitted inmates to use the law library beginning in August 2021, but only during the 15-minute period that inmates were not locked down. After researching how to file a collateral attack, Felder realized that he needed to file his motion within a year of his conviction. (*Id.* at ¶ 6.)

In his declaration, Felder also contends for the first time that he wrote a letter to the Court on October 12, 2021, asking for an extension of time to file his § 2255 motion. (*Id.*) Felder attaches a handwritten letter dated October 12, 2021 as "Exhibit A" to his declaration. (ECF No. 7-2.) The October 2021 letter refers to the COVID-19 pandemic and Felder's prison transfers and asks for "a few extra months to obtain [his] legal documents and research the law pertaining to the issues

3

[he] wanted to raise in [his §] 2255 [motion]." (*Id.* at 2.) The October 12, 2021 letter does not assert any grounds for relief. (*See id.*) Felder does not provide any evidence that he handed this letter to prison officials for filing in October 2021, and the letter was not received by the Clerk of the Court or docketed in Felder's criminal case. (*Id.*) Felder, however, contends that his March 30, 2022 letter was his second letter to the Court and that he "was waiting to get a response from the Court." (*Id.* at ¶ 7.)

Felder also provides a declaration from Nathan Antonio Davis, an inmate at FCI Berlin who assisted Plaintiff in filing his amended § 2255 motion. (*See* ECF No. 7-2, Davis Decl. ¶¶ 1-2.) Davis avers that Felder informed him about the October 12, 2021 letter and that Davis unintentionally omitted this information from Felder's § 2255 amended motion. (*Id.* ¶¶ 3-4.) Davis also "admit[s]" that he "should have expounded on Grounds One and Two and . . . [on] the equitable tolling arguments more adequately" in the amended § 2255 motion and in a reply to the government's response. (*Id.* at ¶ 5.)

On August 14, 2023, Felder sought an extension of time to submit a second amended § 2255 motion, along with a letter brief. (ECF Nos. 8, 8-1.) He contends that he was unable to complete his second amended § 2255 motion due the "complexity" of his claims. (ECF No. 8 at 1.) In his letter brief, Felder reiterates the facts in support of equitable tolling. (*Id.* at 6-8.) Felder also claims that he is not a career offender because he lacks two prior convictions necessary to be a career offender under the Guidelines. (*Id.* at 8-14.) Felder's supporting brief amplifies his claim that his plea counsel provided ineffective assistance by conceding career offender status and failing to argue that Felder's prior convictions did not qualify for the career offender enhancement. (*Id.* at 4, 14-16.)

4

On August 23, 2023, the Court denied Felder's requests for counsel and to file a second amended § 2255 motion. (*See* ECF No. 9.) Felder filed a motion for reconsideration, arguing that the Second Circuit's decision in *United States v. Townsend*, 897 F.3d 66 (2d Cir. 2018), supports his claim that his attorney provided ineffective assistance in failing to challenge his career offender status and asks the Court to appoint counsel and permit him to submit a second amended § 2255 motion. (ECF No. 10, at 1-2.) Shortly thereafter, Felder filed another request to submitted a second amended § 2255 motion along with a supporting brief. (ECF Nos. 11, 11-1.) He also filed a reply brief in further support of his claims. (ECF No. 12.)

Although Felder seeks to submit a second amended § 2255 motion, his multiple submissions amplify the claims he raised in his amended § 2255 motion and provide additional arguments regarding his counsel's failure to challenge his career offender designation. The Court denies Felder's motion for reconsideration (ECF No. 10) and his requests to submit a second amended § 2255 motion. (ECF No. 11.) To be clear, the Court will consider all Felder's arguments challenging his career offender status, including those arguments raised in his supplemental filings.

II.     **STANDARD OF REVIEW**

Under § 2255, a federal prisoner may move to vacate, set aside, or correct his federal sentence if: (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) the court lacked "jurisdiction to impose" the sentence; (3) the sentence exceeded "the maximum authorized by law"; or (4) the sentence is "otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). "The statute's language 'is somewhat lacking in precision' but 'afford[s] federal prisoners a remedy identical in scope to federal habeas corpus [under 28 U.S.C. § 2254].'" *United States v. Folk*, 954 F.3d 597, 601 (3d Cir. 2020) (quoting *Davis v. United States*, 417 U.S. 333, 343 (1974)). "The scope of relief does not reach 'every asserted error of law.'" *Id.* (quoting *Davis*,

417 U.S. at 346). Instead, § 2255 provides relief for jurisdictional and constitutional claims, as well as limited types of nonconstitutional claims, such as sentencing errors that violate fair procedure or amount to a miscarriage of justice. *See id.* (citations omitted). A criminal defendant bears the burden of establishing his entitlement to § 2255 relief. *See United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005); *United States v. Bentley*, 49 F.4th 275, 283 (3d Cir. 2022). Moreover, as a § 2255 motion to vacate is a collateral attack on a sentence, a criminal defendant "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) (citing *United States v. Frady*, 456 U.S. 152, 166 (1982)).

As a "general rule . . . claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice," *Massaro v. United States*, 538 U.S. 500, 504 (2003) (citing *Frady*, 456 U.S. at 167-68), or actual innocence. *Bousley v. United States*, 523 U.S. 614, 621-22 (1998)). "In the habeas context, [courts] allow a party to overcome their 'procedural default' if it can show either cause and prejudice or actual innocence." *United States v. De Castro*, 49 F.4th 836, 847 (3d Cir. 2022).

### III. DISCUSSION

#### a. The Motion is Untimely, but the Court need not Determine whether Equitable Tolling is Warranted

Before reaching the merits, the Court briefly addresses timeliness. The Court entered Felder's Judgment of Conviction on October 26, 2020, and his conviction and sentence became final 14 days on later when the time to appeal expired. Felder had one year from November 10, 2020 to file a § 2255 motion. 28 U.S.C. § 2255(f)(1); *Clay v. United States*, 537 U.S. 522, 527 (2003). During that one-year period, which expired on November 10, 2021, Felder did not file a § 2255 motion.

Although Felder's § 2255 motion is untimely under § 2255(f)(1), the one-year statute of limitations for § 2255 cases is subject to equitable tolling. *See Miller v. New Jersey State Dept. of Corrections*, 145 F.3d 616, 619 (3d Cir. 1998) (holding "that the one year period of limitation for § 2255 cases is also subject to equitable tolling"); *see also Ross v. Varano*, 712 F.3d 784, 798 (3d Cir. 2013) (citing *Holland v. Florida*, 560 U.S. 631, 645 (2010)). Equitable tolling applies when a petitioner has been prevented in "some extraordinary way" from timely filing and has "exercised reasonable diligence" in bringing the claims. *Nara v. Frank*, 264 F.3d 310, 319 (3d Cir. 2001), overruled in part on other grounds by *Carey v. Saffold*, 536 U.S. 214 (2002). The petitioner bears the burden of establishing both extraordinary circumstances and reasonable diligence. *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). There are no bright lines for determining eligibility. *Pabon v. Mahanoy*, 654 F.3d 385, 399 (3d Cir. 2011). Although this equitable doctrine is used sparingly, the assessment is flexible and the particular circumstances of the petitioner must be considered. *Id.* "The fact that a petitioner is proceeding pro se does not insulate him from the 'reasonable diligence' inquiry and his lack of legal knowledge or legal training does not alone justify equitable tolling." *Ross*, 712 F.3d at 799-800.

Here, Felder claims that he was on total lockdown from October 2020 through August 2021 due to the COVID-19 pandemic and did not have access to the law library or his legal materials. The World Health Organization ("WHO") declared COVID-19 a pandemic on March 11, 2020.[2] Felder's one-year limitation period did not conclude until November 22, 2021, long after the height of the COVID-19 pandemic. As this Court has recognized, the argument that the lockdowns associated with COVID-19 amount to extraordinary circumstances "is more compelling during the

---

[2] CDC COVID-19 Timeline, available at https://www.cdc.gov/museum/timeline/covid19.html (last visited Apr. 23, 2025).

very early months of the COVID-19 pandemic." *See Peek v. United States*, No. 20-9747, 2023 WL 8110795, at *10 (D.N.J. Nov. 23, 2023) (finding that the lockdowns during the first four months of the COVID-19 pandemic coupled with the petitioner's alleged mental health difficulties warranted tolling); *see also Dunn v. Baca*, No. 3:19-cv-00702, 2020 WL 2525772, at *1 (D. Nev. May 18, 2020) (finding that under the extraordinary circumstances of the COVID-19 pandemic, equitable tolling for a fixed time until August 10, 2020, is warranted). Indeed, other courts in this District have found that law library closures due to COVID-19 lockdowns are not a sufficient extraordinary circumstance to establish equitable tolling where the petitioner had access to the mail and "there is 'no reason to believe that [the petitioner] could not prepare and submit . . . a simple one-paragraph document' to preserve his rights under § 2255." *See United States v. Shumate*, No. 18-cr-0645 2021 WL 1851849, at *2 (D.N.J. May 7, 2021) (quoting *Brown v. Shannon*, 322 F.3d 768, 774 (3d Cir. 2003)).

Here, Felder claims that he could not submit a timely or comprehensive § 2255 motion because he did not have access to the law library, paralegals, or his legal materials, and that he sought to preserve his right to file a § 2255 motion by submitting an extension request to the Court on October 12, 2021, prior to the expiration of the one-year deadline. That purported letter was never received by the Court.[3] Felder requests a hearing on equitable tolling, but the Court denies that request because each of his substantive claims challenging his career offender status fail, as explained below.

---

[3] Felder has submitted a handwritten copy of that letter and a declaration from a fellow inmate to support his claim. It is notable that Felder does not provide postage remits or postage deductions from his prison account showing that he actually handed the October 12, 2021 letter to prison officials for mailing. And Felder's claim that he submitted this October 12, 2021 extension request is also undercut by his March 30, 2022 letter, which does not refer to his earlier extension request or question why it went unanswered.

8

### b. Felder's Challenges to his Career Offender Enhancement

The claims in Felder's amended § 2255 motion all challenge his career offender enhancement. Felder argues that he was improperly sentenced as a career offender and claims that his counsel provided ineffective assistance by stipulating to the enhancement and failing to raise various legal challenges.

Ineffective assistance of counsel claims are properly raised on collateral review. *Massaro v. United States*, 538 U.S. 500, 504 (2003). To succeed on an ineffective assistance of counsel claim, a petitioner must satisfy the two-part test set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner must demonstrate "(1) that counsel's performance was deficient, that is, it fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced his client." *Albrecht v. Horn*, 485 F.3d 103, 127 (3d Cir. 2007) (citing *Strickland*, 466 U.S. at 689-92). The petitioner bears the burden of establishing that counsel's performance prejudiced the defense. *Marshall v. Hendricks*, 307 F.3d 36, 89 (3d Cir. 2002). "The Sixth Amendment requires effective assistance of counsel at critical stages of a criminal proceeding[,]" including during plea negotiations, at sentencing, and on appeal. *Lafler v. Cooper*, 566 U.S. 156, 162-65 (2012).

Felder's claim that he was incorrectly sentenced as a career offender, however, is barred by *United States v. Folk*, 954 F.3d at 609 (holding "that a nonconstitutional claim based on an incorrect career-offender enhancement under the advisory Guidelines is not cognizable under § 2255"). Because Felder also contends that his counsel violated his Sixth Amendment right to effective

assistance by failing to challenge to his career offender status, the Court addresses his claims on the merits.

The Court begins with Felder's claim in ground one that he is not a career offender because his prior convictions under N.J.S.A. 2C:35-7 are not qualifying controlled substance offenses. According to the Sentencing Guidelines,

> (a) A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1. In his Plea Agreement, Felder stipulated that he was a career offender. The government contends that Felder has four qualifying convictions and attaches to its answer copies of the judgments of conviction for Felder's 2004 and 2009 convictions under N.J.S.A. 2C:35-7 for possessing with the intent to distribute a controlled dangerous substance within 1000 feet of a school zone. (ECF No. 5-1 at 1-8.) The 2004 and 2009 judgments of conviction, which Felder does not dispute are authentic, indicate that the drug involved was cocaine. (*See* ECF No. 5-1 at 4, 6, 8.) Felder also acknowledges in his amended § 2255 motion that his prior drug offenses involved cocaine. (ECF No. 1, Amended Motion at 5.)

A "controlled substance offense" is defined by the Guidelines as

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b); *see* U.S.S.G. § 2K2.1 cmt. n.1 (stating that the § 4B1.2(b) definition governs § 2K2.1). The Guidelines do not separately define "controlled substance" as used in the definition of "controlled substance offense." *See* U.S.S.G. § 4B1.2(b).

10

Felder argues that that his cocaine convictions under N.J.S.A. 2C:35-7 do not qualify as controlled substance offenses under the Guidelines because New Jersey's definition of controlled substance and the federal definition are not a categorical match. Specifically, Felder contends that New Jersey criminalizes substances, such as ioflupane, a cocaine analog, but ioflupane is excluded as a controlled substance under federal law. In 2015, the Drug Enforcement Administration removed ioflupane from the schedules of the Controlled Substances Act. *See* Schedules of Controlled Substances: Removal of Ioflupane from Schedule II of the Controlled Substances Act. 80 Fed. Reg. 54715 (Sept. 11, 2015) (codified at 29 C.F.R. pt. 1308); 21 C.F.R. § 1308.12(b)(4)(ii). New Jersey, however, does not exclude ioflupane from its definition of cocaine. *See* N.J.S.A. § 2C:35-5b(1); *Martinez v. Att'y Gen.*, 906 F.3d 281, 287 (3d Cir. 2018) ("To be sure, the New Jersey statute criminalizes any derivative of coca leaves. And federal law currently exempts Ioflupane, a derivative of coca leaves, from the lists.") (internal citations omitted).

Felder also contends that his counsel was deficient for stipulating that he is a career offender and failing to argue that his cocaine convictions do not qualify him as a career offender. He further contends that there is a reasonable probability that the Court would not have sentenced him as a career offender but for his counsel's deficient performance. In his supplemental filing, Felder argues that he is not a career offender based on the Second Circuit's decision in *United States v. Townsend*, 897 F.3d at 74–75 (holding that the meaning of "controlled substance" under U.S.S.G. § 4B1.2(b)is limited to drugs regulated by the CSA) and other lower court decisions applying the *Townsend* rationale.

But on January 26, 2023, the Third Circuit held, contrary to *Townsend*, that a "[t]he meaning of 'controlled substance' as used in Guidelines § 4B1.2(b)'s definition of 'controlled substance offense' includes drugs regulated by state law at the time of the predicate state

11

conviction, even if they are not federally regulated or are no longer regulated by the state at the time of the federal sentencing." *United States v. Lewis*, 58 F.4th 764, 773 (3d Cir. 2023) (finding that "Marijuana, including hemp, was regulated by New Jersey law at the time of [the defendant's] predicate state conviction, so the District Court erred in declining to apply the § 2K2.1(a)(4)(A) enhancement.")

*Lewis* relies on the categorical approach and its varying applications. "The categorical approach dictates whether a prior conviction qualifies as a predicate offense that triggers a Guidelines enhancement." *Id.* at 767 (citing *United States v. Williams*, 898 F.3d 323, 333 (3d Cir. 2018)). The categorical approach requires the court to look only to the statutory definition of the prior offense and not the particular facts underlying that offense. *Id.* (citing *Taylor v. United States*, 495 U.S. 575, 600 (1990). In "the typical application of the categorical approach," courts must "ask whether the elements of the state crime 'match the elements' of the corresponding federal or generic crime." *Id.* at 767-68 (citing *Mathis v. United States*, 579 U.S. 500, 504 (2016)).

In *Lewis*, however, the Third Circuit found that this typical approach does not apply "because Guidelines § 4B1.2(b) defines a 'controlled substance offense' by reference to certain prohibited conduct, not by reference to a federal criminal statute or a 'generic' crime." *Id.* at 768. In jettisoning the typical categorical approach, the Third Circuit relied on the Supreme Court's decision in *Shular v. United States*, 589 U.S. 154, 160 (2020) and found that courts must simply compare the elements of the prior conviction to the definition of a controlled substance offense in § 4B1.2(b).[4] *See id.* at 768. That definition "contains three parts: (1) 'an offense under federal or state law,' (2) 'punishable by imprisonment for a term exceeding one year,' (3) that 'prohibits the

---

[4] In *Shular*, the Supreme Court affirmed the Eleventh Circuit's holding that § 924(e)(2)(A)(ii)'s "serious drug offense" definition does not require a comparison to a generic offense. *See id.*

12

manufacture, import, export, distribution, or dispensing of a controlled substance,' or possession with the intent to do so." *Id.* (citing U.S.S.G. § 4B1.2(b)).

The Third Circuit next addressed whether a "'controlled substance within § 4B1.2(b)'s definition of "controlled substance offense" is limited to drugs regulated by the federal CSA and looked to the plain text of § 4B1.2(b) to find that a "controlled substance offense" is one regulated by either federal or state law. *Lewis*, 58 F.4th at 769. Because "a 'controlled substance' under § 4B1.2(b) of the United States Sentencing Guidelines is a drug regulated by either state or federal law[,]" the Third Circuit found it "irrelevant that the New Jersey statute under which Lewis was convicted defined 'marijuana' more broadly than federal law." *Id.* at 771.

In light of the reasoning and holding in *Lewis*, Felder's claim that the New Jersey statute under which he was convicted defines cocaine more broadly than federal law likewise fails. Felder's cocaine offenses qualify as controlled substance offenses under the Guidelines, and he was properly sentenced as a career offender. Moreover, Felder's attorney could not be deficient for conceding that Felder was a career offender or for failing to argue a position Third Circuit has since rejected. *See, e.g., Real v. Shannon*, 600 F.3d 302, 309 (3d Cir. 2010) (citing *Parrish v. Fulcomer*, 150 F.3d 326, 328 (3d Cir. 1998) (counsel not ineffective for failing to raise a meritless argument). For these reasons, the Court denies relief on grounds one and two of Felder's amended § 2255 motion.

In ground three of his amended § 2255 motion, Felder contends that he is not a career offender in light of *United States v. Nasir*, 17 F.4th 459, 472 (3d Cir. 2021). There, the Third Circuit, sitting *en banc*, overruled *United States v. Hightower*, 25 F.3d 182 (3d Cir. 1994), and held that inchoate crimes (such as conspiracy and attempt) do not qualify as a "controlled substance offenses." *See Nasir*, 17 F.4th at 472. The Third Circuit first decided this issue on

December 1, 2020, in *United States v. Nasir*, 982 F.3d 144, 160 (3d Cir. 2020) ("Nasir I"). The Supreme Court subsequently vacated the Third Circuit's decision in *Nasir I* and remanded for further consideration of a related issue not relevant here. *See United States v. Nasir*, 142 S. Ct. 56 (2021). On remand, the Third Circuit reached the same conclusion with respect to inchoate offenses.

As noted above, Felder's argument that he was improperly sentenced as a career offender in light of *Nasir* is not cognizable in a § 2255 motion. *See Folk*, 954 F.3d at 609 (holding "that a nonconstitutional claim based on an incorrect career-offender enhancement under the advisory Guidelines is not cognizable under § 2255"); *United States v. Blackwell*, No. 24-1840, 2024 WL 4457453, at *1 (3d Cir. Oct. 10, 2024) (recognizing that a challenge based on *Nasir* could not be brought in a § 2255).

To the extent this is actually an ineffective assistance argument, the government contends that violations of N.J.S.A. 2C:35-7 for possession with intent to distribute cocaine are completed crimes and not inchoate offenses, and, therefore, *Nasir* does not apply. The Court agrees. As explained in *Nasir*, "[a]n inchoate offense is a step toward the commission of another crime, the step itself being serious enough to merit punishment" and includes "for example, the attempt, conspiracy, or solicitation to commit a crime." 17 F.4th at 469 n.10 (brackets and internal quotation marks omitted); *see United States v. Livsey*, No. 20-2893, 2022 WL 1819093, at *2 n.3 (3d Cir. Jun. 3, 2022) (noting that possession with the intent to distribute a controlled substance is not an inchoate offense). Because Felder's drug convictions are completed crimes, Felder's counsel could not be ineffective for failing to challenge Felder's status as a career offender on that basis.

Moreover, even if Felder's New Jersey convictions for possession with intent to distribute cocaine are arguably inchoate, his counsel is not deficient for failing to anticipate this change in

14

the law. Felder pleaded guilty on July 17, 2019, and was sentenced on October 26, 2020, prior to *Nasir I*. Thus, at the time of Felder's plea and sentencing, the controlling Third Circuit precedent on this issue was *Hightower*, 25 F.3d at 187, which held that a "controlled substance offense" includes inchoate offenses. Under *Hightower*, Felder clearly qualified as a career offender, and under Third Circuit law, counsel has no obligation to anticipate a change in the law unless it is clearly foreshadowed. *See Sistrunk v. Vaughn*, 96 F.3d 666, 672 (3d Cir. 1996) (holding that defense counsel's failure to predict the Supreme Court's decision in *Batson v. Kentucky*, 471 U.S. 1052 (1985) did not constitute ineffective assistance); *Rock v. United States*, No. 20-16059, 2023 WL 8759091, at *9 (D.N.J. Dec. 19, 2023) (finding that counsel had no obligation to anticipate that the Third Circuit would overturn *Hightower* in *Nasir* or raise a challenge to petitioner's career offender status that would have failed under settled precedent).

For these reasons, the Court also denies relief on ground three of Felder's amended § 2255 motion.

### c. The Court Denies a Certificate of Appealability

A petitioner may not appeal a final order in a § 2255 proceeding unless a circuit or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). The Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28. U.S.C. § 2253(c)(2). "That standard is met when 'reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner.'" *Welch*, 578 U.S. at 127 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Here, reasonable jurists would not debate that Felder is not entitled to relief on the claims in his amended § 2255 motion. For this reason, the Court denies a certificate of appealability.

## IV. CONCLUSION

For the reasons set forth in this Opinion, the Court denies Felder's amended § 2255 motion without a hearing and denies a certificate of appealability. An appropriate Order follows.

*s/Katharine S. Hayden*
KATHARINE S. HAYDEN
United States District Judge

DATED: May 13, 2025.